**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>     Plaintiff, <br><br>    v. <br><br> TIMOTHY N. DALY, <br><br>     Defendant. |

Civil Action No. 05–55 (CKK)

**MEMORANDUM OPINION**
(February 11, 2006)

Plaintiff, the Securities and Exchange Commission (SEC), filed a Complaint in the instant case alleging that Defendant, Timothy N. Daly, aided and abetted violations of the Exchange Act.  Defendant, proceeding *pro se*, filed [5] Motion to Transfer Venue on March 15, 2005.  Plaintiff filed [6] Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer on March 24, 2005.  Defendant did not file a Reply.  After considering the aforementioned pleadings, the Complaint, and the relevant case law, the Court shall DENY Defendant's Motion to Transfer Venue.

**I: BACKGROUND**

Plaintiff alleges that Defendant aided and abetted violations of the Exchange Act by signing audit confirmation letters that Defendant knew, or was reckless in not knowing, were materially false.  Compl. ¶ 1.  When the alleged violations occurred, Defendant worked as Director of Business Development for Michael Foods, a food distributor that sold eggs and other products to U.S. Foodservice ("USF"), a wholly owned subsidiary of Koninklijke Ahold N.V. ("Ahold") which has headquarters in Columbia, Maryland.  *Id.* ¶¶ 1, 4, 9, 10.

On or about October 17, 2003, Ahold filed its Form 20-F for the fiscal year ending

December 29, 2002, which contained in part restatements for the fiscal years 2000 and 2001,

corrected accounting adjustments for fiscal year 2002, and restated amounts for fiscal years 1998

and 1999 included in summary data.  *Id*. ¶ 3.  The restatements indicated that Ahold had

submitted filings and public statements including overstatements of net income, operating

income, and net sales.  *Id*.  Plaintiff claims that these erroneous filings were in part facilitated by

fraud on the part of USF officials designed to inflate the value of promotional allowances—a key

source of income for USF—received from its food distributors.  *Id.* ¶¶ 4, 10.  Plaintiff alleges

that outside auditors employed by USF unwittingly sent letters to various distributors containing

erroneous and fraudulent promotional allowance figures, requesting signed verification of the

figures from the distributors.  *Id.* ¶¶ 11-12.  Unbeknownst to the auditors, USF officials directly

contacted employees of the distributors receiving the erroneous figures for verification and

encouraged them to sign the audit letters through various means, such as representing that the

figures were merely "internal numbers" and not reflective of actual amounts due to USF.  *Id.* ¶¶

11, 13.  These actions by the officials of USF and its vendors, including Defendant, allegedly

resulted in the fraudulent verification of misleading revenue figures.  *Id.* ¶ 5.

In the instant case, Defendant concedes that he signed audit letters containing

promotional allowance figures for business conducted between Michael Foods (as well as its

wholly owned subsidiaries, Northern Star and Kohler) and USF during fiscal years 2001 and

2002.  Def.'s Answer ¶¶ 14, 16, 17.  However, Defendant disputes Plaintiff's claim that he

signed the letters knowing that the figures were inflated or altogether false.  *Id.*

Presently before the Court, Defendant's Motion to Transfer Venue seeks to transfer the

instant case to the Southern District of Texas, Houston Division, from the District of the District of Columbia.  Mot. Transf. ¶ 1.  Defendant argues that a change in venue is warranted because "each signing was done at [Defendant's] residence in the State of Texas and no documents which [Defendant] signed were transmitted by [Defendant] to the District of Columbia or by anyone else.  No part of this case transpired in Washington D.C. and no witnesses reside in the District of Columbia . . . ."  *Id.* ¶ 3.  Defendant also claims that, in the interest of justice and fairness, transfer is appropriate because his personal financial resources, as well as those of his family and friends, have been depleted defending criminal charges based on identical facts brought against him by the U.S. Attorney's Office in New York such that Defendant does not have the resources to defend himself in this District.  *Id.* ¶ 4.  Finally, Defendant asserts that he can receive legal assistance at no cost to him if the case is tried in Houston (though he does not clarify the basis for this assumption), whereas Defendant claims he will be unable to afford an attorney to represent him should the case proceed in the District of Columbia.  *Id.* ¶ 5.

## II: LEGAL STANDARDS & DISCUSSION

The Court will consider Defendant's claims that venue in the District of Columbia is improper and that the case should be transferred in the interest of fairness separately, since his claims invoke two distinct legal standards which the Court will consider in conjunction with his claims.

### A.    *Venue is proper in this District*

Defendant claims that venue is improper in this District because he signed all of the documents at issue at his residence in Texas, no part of the case transpired in the District of Columbia, and no witnesses reside here.  Mot. Transf. ¶ 3.  In reference to violations of the

Securities and Exchange Act, pursuant to 15 U.S.C. § 78aa:

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business. . . .

15 U.S.C. § 78aa. Therefore, a civil enforcement action by the SEC such as this one may be brought in the district where "any act" constituting the violation took place. *Id.*; *Investors Funding Corp. v. Jones*, 495 F.2d 1000, 1002 (D.C. Cir. 1974) (per curiam). As an initial matter, the act of filing documents with the SEC has a locus in the District of Columbia. *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 n.12 (D.C. Cir. 1978). Furthermore, if an act is committed in the District of Columbia by a party operating in furtherance of a fraudulent securities scheme involving multiple defendants, such act is sufficient to satisfy venue requirements for all defendants, irrespective of whether each defendant committed a direct violation in the District of Columbia. *SEC v. Wallace*, 94 F. Supp. 2d 1, 2 (D.D.C. 2000), citing *SEC v. Nat'l Student Mktg. Corp.*, 360 F. Supp. 284 (D.D.C. 1973).

In this case, Plaintiff alleges that Defendant participated in a scheme that culminated in the filing of fraudulent and misleading figures with the SEC in Washington, DC. Pl.'s Opp'n at 2–3. The fact that Defendant did not personally submit any documents to the SEC in the District of Columbia is irrelevant. Therefore since Defendant, in concert with USF, allegedly aided Ahold in filing fraudulent figures with the SEC in the District of Columbia, venue for this action is proper in the District of Columbia.

### B.    Transfer should not be granted in the interest of justice and fairness

Defendant further argues that venue should be transferred from the instant District to the

Southern District of Texas, "in the interest of justice and fairness." Mot. Transf. ¶ 6.  In doing

so, Defendant cites—without specificity or any supporting documentation—financial difficulties

he has encountered due to criminal prosecution in New York based on the same facts at issue in

this case.  *Id.* ¶ 4.  Specifically, Defendant states in his motion and affidavit that he has exhausted

his own financial resources as well as those of his friends and family and therefore cannot afford

to travel to the District to defend himself or hire an attorney.  *Id.*  Defendant also claims that he

will be better able to defend himself against the charges at hand if this case is transferred to the

Southern District of Texas, Houston Division, because he can obtain legal assistance at no cost to

him there.  *Id.* ¶ 5.  The SEC maintains that Defendant is unable to satisfy the burden that a

defendant seeking to disturb the plaintiff's chosen forum must meet.   Pl.'s Opp'n at 7.

Because Plaintiff is *pro se*, the Court will construe Plaintiff's Motion to Transfer in the

interest of justice and fairness as if it had been brought pursuant to 28 U.S.C. § 1404(a), which

states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  A court's consideration of a motion to transfer venue "is made pursuant to

an 'individualized, case-by-case consideration of convenience and fairness.' "  *S. Utah*

*Wilderness Alliance v. Norton*, 2002 WL 32617198 at 2 (D.D.C.) (quoting *Stewart Org. v. Ricoh*

*Corp.*, 487 U.S. 22, 29 (1988)).  District courts have broad discretion when assessing whether

transfer should be granted.  *See Savoy Indus. Inc.*, 587 F.2d at 1154.  Furthermore, Defendant

bears the burden of establishing that transfer is proper.  *Reiffen v. Microsoft Corp.*, 104 F. Supp.

2d 48, 50 (D.D.C. 2000).

Upon considering a motion to transfer venue, the Court must first establish "whether the

action could have been brought in the proposed transferee district." *Gemological Inst. of Am., Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001).  Once the Court is satisfied that Plaintiff had the option of bringing the case in the proposed transferee district, the Court further considers various private and public interests affected by the proposed transfer.  *See Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 31–32 (D.D.C. 2002).  The Court's analysis of these three areas reveals that while Plaintiff could have brought this action in the Southern District of Texas, Defendant has not proven that private and public interests favor transferring the instant case.

    *1.  Consideration of venue in Southern District of Texas*

  As stated above with reference to violations of the Securities and Exchange Act, pursuant to 15 U.S.C. § 78aa:

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred.  Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business. . . .

15 U.S.C. § 78aa.  Since Defendant resides in Spring, Texas, which is located within the Southern District of Texas, this action plainly could have been brought in the district to which Defendant requests a transfer under the defendant "is an inhabitant" clause of 15 U.S.C. § 78aa. Mot. Transf. ¶ 2.  However, the Court notes that the present residence of Defendant is likely the only tenet by which venue is proper in the Southern District of Texas under 15 U.S.C. § 78aa. Defendant states in his Answer that "all of the actions of which defendant is directly accused occurred in Dallas, Texas."  Def.'s Answer ¶ 8.  Dallas, Texas, is not within the boundaries of the Southern District of Texas; Dallas is in fact located in the Northern District of Texas.  Thus,

despite Defendant's allegation that none of the acts in question occurred in the District of

Columbia (which, as explained above, is not true as a matter of law), Defendant nonetheless

offers no evidence that any acts occurred in the district to which he is requesting a transfer, since

he claims to have signed the confirmation letters within the boundaries of the Northern District

of Texas–not the Southern District of Texas.

### 2.     Consideration of private interest factors

When assessing a motion to transfer venue, the Court must consider several factors that

reflect convenience and fairness to the litigants.  *S. Utah Wilderness Alliance*, 2002 WL

32617198 at *2.  These include the "(1) the plaintiffs' choice of forum, unless the balance of

convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3)

whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the

witnesses ⋯, but only to the extent that the witnesses may actually be unavailable for trial in one

of the fora; and (6) the ease of access to sources of proof."  *Thayer/Patricof Educ. Funding*, 196

F. Supp. 2d at 31.

### a.     Choice of forum and location where claim arose

Courts typically give significant deference to the plaintiff's choice of forum.  *S. Utah

Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004).   In an SEC civil action

governed by the special venue statute 15 U.S.C. § 78aa, if a fraudulent document was filed in the

District of Columbia, the defendant cannot successfully argue that venue is not appropriate just

because none of the other events in the case transpired in the District of Columbia.  *See Savoy

Industries*, 587 F.2d at 1155.  *See generally supra* Section II(A).  Moreover, Defendant's

argument that "no part of the case transpired in Washington, D.C." is incorrect as a matter of law,

in light of the fact that SEC filings based on Defendant's alleged misrepresentations were made in the District of Columbia.  Mot. Transf. ¶ 1; Pl.'s Opp'n at 4.  Thus, the Court should give substantial deference to Plaintiff's chosen forum and disregard Defendant's argument that no part of the case transpired here.  Additionally, as explained in Section II(B)(1), it is the Court's understanding that Defendant represents that he signed the confirmation letters at issue in Dallas, Texas, which is within the boundaries of the Northern District of Texas, not the Southern District of Texas.  *See supra* Section II(B)(1).

b.      *Convenience of the Parties*

A court should not transfer a case merely to shift inconvenience from the defendant to the plaintiff, rather "the net convenience must increase."  *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 27 (D.D.C. 1997) (quoting *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988)).  In Defendant's Motion to Transfer, Defendant relies heavily on his unsupported claim that, due to his professed inability to pay to defend himself in the District of Columbia or hire an attorney, his convenience would be far better served through a transfer.  Mot. Transf. ¶¶ 4, 5.  Plaintiff, on the other hand, asserts that its convenience considerations outweigh those of Defendant's, citing in particular that the SEC's offices, and its attorneys working on this case, are located in the District of Columbia.[1]  Pl.'s Opp'n. at 8.

It is proper to "consider in assessing the interest of justice 'the relative ability of the parties to bear the expenses of litigating in a distant forum.' "  *Gemological Inst. of Am*, 145 F.

---

[1]  At the time the SEC filed its Opposition, several related cases were pending before this Court.  The presence of related cases is a relevant consideration when considering a § 1404(a) transfer, *see SEC v. Ernst & Young*, 775 F. Supp. 411, 416 (D.D.C. 1991) (holding that it is appropriate to consider the existence and venue of related cases, at least to the extent that trying related cases in the court will impact judicial economy).  However, as of the date of this Opinion, there are no related cases currently pending before the Court.

8

Supp. 2d at 74 (quoting *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638,

641–42 (D. Minn. 1996)).  In *Gemological Institute of America*, the court considered a case in

which the defendant, a small retailer situated in Texas, argued that its litigation costs would be

onerous in the District of Columbia.  *Id.*  While the court in that case concluded that the

defendant's impaired ability to finance litigation favored transfer, the court's decision rested on

other factors as well, including the availability of witnesses and other evidence in the transferee

forum and the fact that Plaintiff did not originally bring the case in its home forum.  *See id.* at

71–75.  Furthermore, the lack of information before the Court in the instant case regarding

Defendant's actual financial status does not support a similar conclusion.  Defendant has failed to

provide the Court with any specifics or documented proof related to his assertion of financial

duress and therefore does not provide the Court with a real basis for disrupting the Plaintiff's

choice of forum.

Also, regarding Plaintiff's inability to afford counsel in this District, the Court notes that

plaintiffs in civil cases generally do not have a constitutional or statutory right to counsel.  *See

Willis v. F.B.I.*, 274 F.3d 531, 532-33 (D.C. Cir. 2001).  However, legal services may be obtained

by parties with financial difficulties through various programs offered in this District, even for

civil suits.  *See* Consumers' Guide to Legal Help, American Bar Association,

http://www.abanet.org/legalservices/findlegalhelp/home.cfm (last visited February 10, 2006).  It

is unclear to the Court why Defendant would profess to be able "to obtain some legal assistance

at no cost" in the Southern District of Texas without considering why such assistance would be

more readily obtained in the Southern District of Texas than in the District of Columbia.

While Plaintiff made a limited showing of inconvenience in the event that this case were

transferred to the Southern District of Texas, particularly given that no related cases remain

before this court,[2] it is nonetheless Defendant's burden to prove that a transfer of venue is

warranted.  *See Reiffen*, 104 F. Supp. 2d at 50.  Therefore, based on the superficial nature of

Defendant's claim of inconvenience, Defendant has not met his burden of demonstrating superior

inconvenience.

c. *Availability of witnesses and ease of access to sources of proof*

In his Motion to Transfer Venue, Defendant fails to demonstrate whether transfer to the

Southern District of Texas would improve either availability of potential witnesses or ease of

access to sources of proof in the case.  The burden to make such a showing rests with the moving

party.  *See, e.g., Thayer/Patricof Education Funding*, 196 F. Supp. 2d at 33 (holding that when

filing a motion to transfer venue under § 1404(a), a defendant  "must demonstrate . . . what a

non-resident will testify to, the importance of the testimony to the issues in the case, and whether

that witness is willing to travel to a foreign jurisdiction").  The only information before the Court

on the location of witnesses and sources of proof is the SEC's assertion that most witnesses are

located locally, since the alleged fraud occurred primarily at USF Headquarters in Columbia,

MD, and the auditors to whom Defendant provided confirmation letters are located in Baltimore,

MD.  Pl.'s Opp'n. at 8.

3. *Consideration of public interest factors*

Upon considering a § 1404(a) motion to transfer venue, the Court should assess public

interest factors including: (1) the transferees' familiarity with the governing laws; (2) the relative

---

[2]  As this Court observed in *SEC v. Ernst & Young*, it is not always appropriate to equate the convenience of the SEC as an institution with the location of its lawyers.  *SEC v. Ernst & Young*, 775 F. Supp. 411, 415 (D.D.C. 1991).  Otherwise, the SEC could argue in every enforcement case brought based on documents misfiled or not filed in the District that, because its attorneys are located here, convenience strongly demands that venue not be transferred.  *Id.* at 415–16.

congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Thayer/Patricof Education Funding*, 196 F. Supp. 2d at 31–32. Defendant does not make any claim that the public interest would be served in any way by transferring this case. Plaintiff, on the other hand, argues that this Court is more familiar with federal securities law (citing in particular the now-resolved related cases) and that the Southern District of Texas has no local interest in resolving this case. Pl.'s Opp'n at 9.

This case is grounded in relatively uncomplicated federal law, and there is no reason to believe that its application would present difficulties for either this Court or the Southern District of Texas. See *Thayer/Patricof Education Funding*, 196 F. Supp. 2d at 36–37 (stating that "four of the counts allege violations of federal securities law, which any federal court is able to apply."). Further, neither party alleges any docket congestion or local interest in either venue that would impact the resolution of this case.

On the whole, public interest factors do not favor a transfer of venue to the Southern District of Texas, and Defendant has therefore also failed to meet his burden in this respect. *See Reiffen*, 104 F. Supp. 2d at 50.

### III:  CONCLUSION

For the reasons set forth above, the Court shall DENY Defendant's Motion to Transfer. An Order accompanies this Memorandum Opinion.

Date:   February 11, 2006


_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge

11